UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FELICIA GUTIERREZ, o.b.o.<br>J.G., a minor child,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>    Defendant. | No. CV-08-0394-CI<br><br>ORDER GRANTING IN PART<br>PLAINTIFF'S MOTION FOR SUMMARY<br>JUDGMENT AND REMANDING TO THE<br>COMMISSIONER FOR AN IMMEDIATE<br>AWARD OF BENEFITS |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 17, 19.) Felicia Gutierrez, mother of minor child, J.G., protectively filed for Supplemental Security Income (SSI) on behalf of J.G. Attorney D. James Tree represents the minor child (Plaintiff); Special Assistant United States Attorney Leisa A. Wolf represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.) After reviewing the transcript of proceedings and briefs filed by the parties, the court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment (Ct. Rec. 17), and remands the matter to the Commissioner for an immediate award of benefits.

## JURISDICTION

On January 24, 2003, Ms. Gutierrez protectively filed an application for SSI benefits on behalf of Plaintiff alleging

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING TO THE COMMISSIONER FOR AN IMMEDIATE AWARD OF BENEFITS - 1

Plaintiff's disability due to developmental delays and speech problems, with an alleged onset date of January 1, 1995. (Tr. 105, 108, 141.) Plaintiff was nine years old at the time the application was filed. The application was denied initially and on reconsideration. After an administrative hearing, Administrative Law Judge ("ALJ") Paul Gaughen denied benefits on May 19, 2005; a review was requested, and the Appeals Council remanded the case for a new hearing and new decision. (Tr. 52-53.) On January 22, 2008, ALJ Gaughen conducted a new hearing. (Tr. 262-92.) Ms. Gutierrez, J.G. (who was represented by counsel), and medical expert Scott Mabee, Ph.D., testified. Plaintiff was 13 at the time of the hearing. The alleged onset date was amended to September 2005. (Tr. 281.) On May 2, 2008, ALJ Gaughen issued a decision finding Plaintiff was not disabled. (Tr. 17-28.) The Appeals Council denied a request for review on November 7, 2008. (Tr. 7-10.) At that time, the ALJ's decision became the final decision of the Commissioner. This appeal followed pursuant to 42 U.S.C. § 405(g).

## SEQUENTIAL EVALUATION FOR CHILDREN

On August 22, 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. 104-193, 110 Stat. 105, which amended 42 U.S.C. § 1382c(a)(3). Under this law, a child under the age of eighteen is considered disabled for the purposes of SSI benefits if "that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (2003).

The regulations provide a three-step process in determining whether a child is disabled. First, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(a). If the child is not engaged in substantial gainful activity, then the analysis proceeds to step two. Step two requires the ALJ to determine whether the child's impairment or combination of impairments is severe. *Id*. The child will not be found to have a severe impairment if it constitutes a "slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c) If, however, there is a finding of severe impairment, the analysis proceeds to the final step which requires the ALJ to determine whether the impairment or combination of impairments "meet, medically equal or functionally equal" the severity of a set of criteria for an impairment in the listings. 20 C.F.R. § 416.924(d).

The regulations provide that an impairment will be found to be functionally equivalent to a listed impairment if it results in extreme limitations in one area of functioning or marked limitations in two areas. 20 C.F.R. § 416.926a(a). To determine functional equivalence, the following six domains, or broad areas of functioning, are utilized: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being. 20 C.F.R. § 416.926a. Limitations in functioning must result from the child's medically determinable impairments. 20 C.F.R. § 416.924a.

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER FOR AN IMMEDIATE AWARD OF BENEFITS - 3

Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER FOR AN IMMEDIATE AWARD OF BENEFITS - 4

weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ADMINISTRATIVE DECISION**

ALJ Gaughen found J.G. was a school-age child at the time the application for benefits was filed and an adolescent at the time of the hearing. (Tr. 20.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment. (*Id*.) At step two, he found the child had the severe impairments of: "oppositional defiant disorder, borderline intellectual functioning, mathematics learning disorder, and adjustment disorder with depressed mood." (*Id*.) At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that medically met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing) or functionally equaled a Listing, as defined in 20 C.F.R. §§ 416.924, 926a. (Tr. 21.) The minor was found not to have an "extreme" limitation in any domain of function, or "marked" limitations in any two domains as either a child or adolescent. (Tr. 22-27.) The ALJ concluded the minor child was not disabled since the date the application was filed. (Tr. 27.)

**ISSUES**

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards.

Plaintiff asserts the ALJ erred when: (1) he found J.G.'s combination of impairments did not medically meet a Listing; (2) improperly rejected an examining psychologist's opinions; and (3) improperly rejected the testimony of the minor child and Ms. Gutierrez. (Ct. Rec. 18 at 13.)

**DISCUSSION**

Plaintiff argues that IQ testing results administered by Roland Dougherty, Ph.D., in May 2007, combined with his medically determinable severe impairments establish medical equivalence to Listing § 112.05D. (Ct. Rec. 18 at 15.) To medically meet the level of severity in Listing § 112.05D, Plaintiff must have a "valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." 20 C.F.R. Pt. 404, Subpart. P., App. 1 § 112.05D. Plaintiff contends because the ALJ neither rejected nor credited Dr. Dougherty's psychological evaluation and findings, Dr. Dougherty's findings should be credited, and Plaintiff should be adjudged disabled. Defendant responds the ALJ's decision is based on substantial evidence and should be affirmed. (Ct. Rec. 20.)

In addition to school records and evaluations by school health care health professionals, Plaintiff was examined by Dr. Dougherty, and Jay Toews, Ed.D. Both psychologists reviewed Plaintiff's school records. (Tr. 162-71, 180-203, 226-29, 236-40, 247-59.) In September 2003, Dr. Toews reviewed the records, including Wechsler Intelligence Scale for Children (WISC-III) test results from IQ testing administered by Yakima School District in December 2002. (Tr. 226, 236.) Those results indicated Plaintiff had a Verbal IQ of 88, Performance IQ of 80 and Full Scale IQ of 83 (low average

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER FOR AN IMMEDIATE AWARD OF BENEFITS - 6

range). (Tr. 227, 236.) Plaintiff was eight years old at the time of testing. (Tr. 226.)

Dr. Dougherty conducted a Social Security evaluation in May 2007, and administered several psychological tests, including the WISC-III and the Comprehensive Trail-Making Test (CTMT). (Tr. 247, 253-54.) Test results indicated Plaintiff had a Verbal IQ of 81, Performance IQ of 65, and Full Scale IQ of 71. (Tr. 253.) Dr. Dougherty noted the discrepancy between the Verbal and Non-verbal scores, and opined the scores suggest "significant intellectual difficulties," and raised the possibility of a non-verbal learning disorder, and a mild cerebral impairments resulting from a high fever as a newborn. (Tr. 249, 253, 255.) He also observed that Plaintiff's "relatively strong verbal skills may make it somewhat difficult for others to realize the extent of his intellectual difficulties." (Tr. 253.) Based on the test results, Dr. Dougherty opined Plaintiff, at the age of twelve and a half, had low socialization skills (age equivalent of four years, four months), and low adaptive behavior composite score (age equivalent of six years four months). (Tr. 254.) Dr. Dougherty concluded Plaintiff was likely to continue having significant academic and learning problems. (Tr. 255.) He diagnosed an oppositional defiant disorder, mathematics learning disorder/non-verbal learning disorder, adjustment disorder with depression, disruptive behavior disorder, NOS, and borderline intelligence. (Tr. 254.)

At the ALJ hearing, after a review of the entire record, medical expert Scott Mabee, Ph.D., testified Plaintiff's impairments did not meet or equal the Listings. (Tr. 270.) Dr. Mabee noted that Dr. Dougherty's WISC-III scores were not "in keeping with any of the

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER FOR AN IMMEDIATE AWARD OF BENEFITS - 7

prior intellectual measures," and that Dr. Dougherty was unable to explain the decline. (Tr. 269.) Dr. Mabee agreed with the other professionals that testing indicates Plaintiff had a math learning disorder. (Tr. 270.) He also opined Plaintiff also had severe intellectual and learning difficulties (under 112.05), oppositional defiant disorder (under 112.08), and an adjustment disorder (under 112.04), but concluded they did not "meet or equal the listing completely." (*Id.*) Dr. Mabee gave no opinion regarding Dr. Dougherty's examining opinions or the significant decline in Plaintiff's Performance IQ as measured in 2007, other than to suggest that it may have "just been related to how quickly the youth went through the testing task." (Tr. 269.) He did not discuss the significance of the Performance IQ score of 65 in determining that Plaintiff did not meet or equal a Listing.

Plaintiff argues the ALJ improperly disregarded Dr. Dougherty's assessed Performance IQ score of 65, which according to Plaintiff is sufficient to equal Listing § 112.05D for mental retardation. (Ct. Rec. 18 at 15.) The ALJ may reject an examining psychologist opinion in favor of a conflicting non-examining medical source opinion if the ALJ gives specific, legitimate reasons for doing so, and if the non-examining medical source's opinion is supported by other evidence in the record. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). However, if an examining psychologist's opinion is supported by objective evidence and is uncontradicted, the ALJ must give "clear and convincing reasons" for rejecting that opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To meet this burden, the ALJ can set out a detailed and thorough summary of the facts and conflicting clinical evidence, state his

interpretation of the evidence, and make findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ is not required to accept the opinion of an examining physician if that opinion is brief, conclusory and inadequately supported by clinical records. *Id*.

Here, the ALJ briefly discussed Dr. Dougherty's evaluation, stating only that "Dr. Dougherty also reported that the claimant's IQ scores were somewhat lower than those noted in previous examinations and offered no explanation for such . . ." This finding is neither sufficiently "clear and convincing" nor specific and legitimate to reject Dr. Dougherty's findings. Further, the ALJ's finding is not supported by substantial evidence. First, the Performance IQ score was significantly lower than the 2002 score, and sufficiently low to meet the IQ component of Listing § 112.05D. In addition, Dr. Dougherty's evaluation is the most current evaluation of Plaintiff's IQ, and the results of the December 2002 IQ testing are too remote to be considered a valid comparison or basis for the ALJ's opinion. *See Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 824 (8th Cir. 2008). As stated in the Commissioner's regulations:

> IQ test results must also be sufficiently current for accurate assessment under 112.05. Generally the results of IQ tests tend to stabilize by the age of 16. Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior. <u>IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above</u>.

20 C.F.R. Pt. 404, Subpt. P App.1 § 112.00D.10. (*Emphasis added*.)

Thus, for purposes of determining equivalency, Plaintiff's December

2002 IQ scores were no longer valid by January 2005.  The ALJ made no findings regarding the validity of the 2002 IQ testing, and he did not reject the 2007 IQ scores with clear and convincing reasons.

In addition to administering the most current IQ tests, Dr. Dougherty specifically noted Plaintiff made a good effort during testing.  He opined the decline in Plaintiff's Performance IQ and his CTMT results (mild to moderate impairment) were possibly due to cerebral impairment from the reported high fever at birth.  (Tr. 252-53, 255).  As explained by Dr. Dougherty, the Performance IQ score is consistent with Plaintiff's reported problems with concentration, organization, precessing speed and distractibility.  (Tr. 253.)  It is also consistent with the most current observations from Plaintiff's teachers regarding Plaintiff's need for small group or isolated instruction to reduce distractions, more time to learn basic skills, and repetition.[1]  (Tr. 181-82.)  Because the ALJ did

---

[1] Plaintiff's self-reported difficulties and his mother's testimony are also consistent with the severe mental impairments diagnosed, the performance deficits (concentration, inability to stay on task, slow pace) described by Dr. Dougherty, and the marked functional limitations in the interacting or relating with others domain (home/community setting) found by Dr. Mabee.  (Tr. 271.) The ALJ disregarded Ms. Gutierrez's testimony because school reports and her reports were "at odds with each other." (Tr. 22.)  This reason is insufficient to totally disregard her testimony and is not supported by substantial evidence.  As explained by Dr. Mabee, an oppositional defiant disorder does not need to "go across multiple settings," and can be specific "to a home setting or in the

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER FOR AN IMMEDIATE AWARD OF BENEFITS - 10

not discuss or properly reject Dr. Dougherty's opinions and objective test results, they are credited as a matter of law. *Lester*, 81 F.3d at 831. Crediting the current IQ testing and diagnoses from Dr. Mabee and Dr. Dougherty, and considering the ALJ's findings of severe mental impairments, Dr. Mabee's unrejected opinions that Plaintiff's mental impairments were severe, and that Plaintiff's interacting and relating with others in the home/community setting was "marked," the record establishes that Plaintiff met or equaled Listing § 112.05D on May 22, 2007. (Tr. 247, 253.)

Regarding the onset date, Plaintiff suggested a September 2005 amended onset date at the hearing, but offers no medical evidence to support this date. (Tr. 281.) Rather, he reasons the amended date falls between the dates of the evaluations by Drs. Toews and Dougherty. As discussed above, however, the test results relied

---

community." (Tr. 271.) Because the ALJ did not identify the specific testimony he found not credible, and the reason he gave for rejecting the Plaintiff's mother's testimony is not supported by the medical expert's evidence, testimony from Ms. Gutierrez and Plaintiff that is consistent with oppositional defiant disorder, depressed mood and learning disabilities is credited as true. *Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007); *Lester,* 81 F.3d at 834 (claimant's testimony credited when ALJ failed to give specific reasons for rejecting); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) (specific, germane reasons must be articulated for rejecting lay testimony).

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER FOR AN IMMEDIATE AWARD OF BENEFITS - 11

upon by Dr. Toews were not current at the time of the hearing. Further, the Commissioner advises that medical evidence is the "primary element" in the determination of onset. *SSR* 83-20. An arbitrary date chosen by Plaintiff is, therefore, insufficient to establish onset. *Id.* Although inferences may be made by a medical expert regarding onset of disabilities with non-traumatic origin,"the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." *Id*. Here equivalency is the basis for a finding of disability and the May 22, 2007, psychological examination unambiguously establishes that Plaintiff met the IQ component of Listing § 112.05 and exhibited significant functional limitations on that date. Because the regulations consider IQ testing results valid for two years if the IQ score is over 40, it is reasonable to expect the child's disability to last at least 12 months. Listing § 112.00D.10; 20 C.F.R. § 416.909. Because the record has been developed fully, and the matter has been delayed considerably, further administrative proceedings would serve no useful purpose. Remand for a calculation and immediate award of benefits is therefore appropriate. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 17)** is **GRANTED IN PART** and the matter is **REMANDED TO THE COMMISSIONER FOR CALCULATION OF BENEFITS WITH AN ESTABLISHED ONSET DATE OF MAY 5, 2007, AND AN IMMEDIATE AWARD OF BENEFITS.**

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 19)** is **DENIED.**

3.   An award of attorney fees may be requested by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  The file shall be **CLOSED** and judgment entered for Plaintiff.

DATED December 4, 2009.

                    S/ CYNTHIA IMBROGNO
              UNITED STATES MAGISTRATE JUDGE